UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN ECKER NICKEL,

        Plaintiff,

                                                                   Case Number 06-10476-BC
v.                                                              Honorable Thomas L. Ludington

UNUM LIFE INSURANCE CO.
OF AMERICA,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION ON THE
APPLICABLE STANDARD OF REVIEW, DENYING PLAINTIFF'S MOTION ON THE
APPLICABLE STANDARD OF REVIEW, AND DETERMINING THAT THE
ARBITRARY AND CAPRICIOUS STANDARD APPLIES IN THE INSTANT CASE**

      The plaintiff began this case on February 3, 2006 alleging that the defendant, UNUM Life Insurance Company, wrongfully denied her application for long term disability benefits and her later appeal under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Thereafter, the defendant filed a motion to extend time in which to file a copy of the administrative record, which originally was to be served on the plaintiff on or before August 24, 2006. The defendant claimed that it was under no obligation to include an outdated summary plan description (SPD) in the plaintiff's possession. The plaintiff maintained that the SPD was controlling with respect to the standard of review applicable in this case. That document apparently did not contain language granting discretion to the defendant to determine an applicant's entitlement to benefits under the plan, and, as a result, the plaintiff argued that this Court should review the denial of benefits *de novo*.

      This Court's predecessor heard oral argument on the matter on August 24, 2006. At the conclusion of the hearing, Judge David M. Lawson determined that the parties were asserting a

procedural challenge to the administrator's decision, *see Wilkens v. Baptist Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman J., concurring) (reasoning that "[t]he district court may consider evidence outside the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision"), and permitted limited discovery to aid in the determination of which standard of review ought to apply. The parties were directed to complete discovery on or before October 6, 2006 and submit supplemental briefs on the standard of review by October 20, 2006. The parties subsequently stipulated to extend the date for filing supplemental briefs until December 22, 2007. The defendant filed a supplemental brief on December 20, 2007 and the plaintiff submitted supplemental authority on December 22, 2007. The parties have filed responses to the respective briefs. Taken together, the parties submissions are cross motions on the applicable standard of review.

The Court heard oral argument on May 1, 2007. After reviewing the parties' supplemental materials, the Court concludes that the arbitrary and capricious standard should govern review of the instant case. The Court therefore will grant the defendant's motion.

I.

The plaintiff filed a claim for long term disability benefits on March 15, 2004 alleging that she was unable to work as a result of unusual fatigue and weakness, shortness of breath, chest pain, exhaustion, and an inability to move for extended periods of time. Ultimately, the plaintiff was diagnosed with Lyme disease. The plaintiff had been employed as a cytologist and ceased work on January 23, 2004.

Sometime after commencing work with Mid-Michigan Medical Center (Mid-Michigan) in 1997, the plaintiff became eligible to enroll in her employer's benefit programs, which among other

things, included long term disability coverage provided by the defendant. She opted for coverage, and claims she was provided with a 1998 summary plan description (SPD) written by the defendant summarizing her benefits. The SPD also contained provisions should an amendment to the plan occur. The 1998 SPD acted as the employee's certificate of coverage and reads, in relevant part:

> Also, if the terms of your certificate of coverage and the policy differ, the policy will govern. Your coverage may be terminated or modified, in whole or in part, under the terms and provisions of the policy.
>
> ***Changes Effective***
>
> Subject to the delayed effective date exceptions, changes in insurance take effect each January 1st.
>
> ***Can the policyholder act as our agent?***
>
> For all purposes of the policy, the policyholder acts on its own or as your agent. Under no circumstances will the policyholder be deemed our agent.
>
> ***Amending Mid-Michigan Medical Center, Midland's ERISA Plan***
>
> Mid-Michigan Medical Center, Midland reserves the right to amend, modify this Plan in any manner, at any time, which may result in the termination or modification of your coverage.
>
> ***Amending Unum's Policy***
>
> The Policy may be changed in whole or in part. Mid-Michigan Medical Center, Midland, can request a Policy change.

Def.'s Mot. Standard Review Ex. 1, 1998 Summary Plan Description. It is undisputed that the 1998 SPD was the only document explaining long term disability benefits with which the plaintiff was provided.

Under Mid-Michigan's plan, the plaintiff was considered a Class 2 participant. Former benefits manager with the Mid-Michigan, Valerie Rossman explained the structure of the plan and its relationship with the provision of SPD booklets:

-3-

> MidMichigan maintained three separate SPDs for this benefit plan according to the classes of the coverage, the first, Class I, being four physicians, the second class being for all other eligible employees, except physicians, and union employees, and Class 3 being union employees. Each class of coverage had different benefit levels, and for that reason, the benefit booklets were different. . . . [W]e maintained separate booklets. A person in Class 2 would never get a Class 1 booklet and vice versa.

Pl.'s Mot. Standard Rev. Ex. 4, Rossman dep. at 13-14.

Thereafter, Mid-Michigan sought an amendment of the policy sometime prior to April 2001. Apparently, the purpose of the amendment was to add two to four part-time physician to the eligible Class 1 participants. Rossman testified at her deposition:

> As I understand [the purpose of the amendment] was to add Class 1, which was physicians, to a part-time eligibility stance. We had at that time I believe two or four – two, three or four physicians that worked 24 hours a week, and this amendment was to add them to eligibility only, any physician again Class 1.

*Id.* at 10.

As a result, or at least at the same time, the defendant prepared proposed "Amendment 20." According to the defendant, it prepared a cover letter with a the proposed amendment, both of which apparently advised Mid-Michigan that the amendments would be considered accepted and part of the contract unless the amendment was signed and returned by approximately June 30, 2001. The cover letter states, in relevant part:

> Please find enclosed Amendment No. 20 to the above referenced policy. This amendment takes into consideration the following:
>
> Effective July 1, 2001:
>
> • The minimum requirement for active employment has changed to 24 hours per week.
>
> **As stated on the amendment itself, all amendments will be considered accepted as part of the contract, unless the amendment is signed and returned within the time frame listed on the front page of the amendment.**

Def.'s Supp. Br. Ex. 2, Amendment 20.  Among other things, Amendment 20 also changed the defendant's discretionary authority to review claims.  It provides, in relevant part:

> If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of March 29, 2001.
> YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AGREEMENT
>
> . . .
>
> 12.  Discretionary Authority
>
> In making any benefits determination under this policy, the Company shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy.

*Ibid.*  It is undisputed that no one at Mid-Michigan signed or returned the amendment.

According to Rossman, "[s]ince this policy and this amendment, as I see it and understand it, was made for the doctors, it was not communicated that I know of beyond the two, three or four doctors affected in Class 1." Rossman dep. at 14.  In addition, she explained that it was up to her or her boss, Michael Hicks, vice president of human resources, to determine whether a change was significant enough to send to all plan participants. *Id.* at 27-28.  Further, if Hicks were unsure about whether the change should be communicated to all participants, he had the discretion to bring the issue before Mid-Michigan's Board of Directors. *Id.* at 28.  Rossman also noted that Mid-Michigan retained an outside law firm with whom she could consult if need be. *Id.* at 29.  As a general rule, however, employees were mailed an SPD on a one-time basis after becoming eligible for benefits unless they made a specific request.  Rossman dep. at 6.

Nonetheless, it is undisputed that the defendant sent 506 new SPDs to Mid-Michigan on May 2, 2002.  The defendant also provided Mid-Michigan's insurance agent, Jamie Costigan, with four

copies of the new SPD at her place of employment, Michigan Health and Hospital Association. On May 24, 2002, Rossman sent an email to Deb Roberts, an employee with the defendant, informing Roberts that the SPDs were on full size paper, not in booklet form, and therefore were "useless" to Mid-Michigan. Def.'s Mot. Standard Rev. Ex. 4, Email. It appears the new SPDs were never distributed and remained in Rossman's office, presumably until they were discarded.

Christina Burke, account manager with the defendant, testified that the defendant prepares summary plan descriptions, but ultimately the responsibility for their dissemination rests with the plan administrator, in this case Mid-Michigan. Def.'s Mot. Standard Rev. Transcripts, Burke dep. at 21-22. In fact, she explained, that the defendant provides SPDs not out of obligation, but as a "courtesy to our clients to distribute to their employees." *Id.* at 53. She also emphasized that communication with plan participants is Mid-Michigan's obligation as is the responsibility to request SPDs. *Id.* at 48-49. Finally, Burke stated that the defendant played no role in determining to whom SPDs should be given following a change in the policy. *Id.* at 50.

II.

It is black letter ERISA law that the arbitrary and capricious standard of review applies only if the ERISA-regulated plan at issue clearly grants discretion to the reviewing party and the decision being appealed was made in compliance with plan procedures. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001). Otherwise, the Court must apply a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989) (reasoning that a court will review a claim for benefits *de novo* unless the plan clearly grants the administrator discretionary authority). The defendant has the burden of demonstrating the existence of discretionary authority. *Ibid.*

A.

In this case, the parties do not dispute that the 1998 SPD does not contain discretionary language. They also agree that Amendment 20 does contain a grant of discretionary authority. The parties, however, dispute whether the plaintiff's SPD should be given controlling weight in determining the standard of review applicable here.

In *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir. 1988), the Sixth Circuit reiterated the principle that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." The underlying rationale is practical: "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet." *Ibid.* (internal citation omitted).

This doctrine, however, has not been extended to circumstances where an SPD is silent on a term. *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) (en banc) (reasoning that the 'principle announced in *Edwards* does not apply to silence. *Edwards*, 851 F.2d at 136 ("if such statements conflict with those in the plan itself, the summary shall govern"). An omission from the summary plan description does not, by negative implication, alter the terms of the plan itself. The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes'") (some citations and quotations omitted)). Thus, a conflict can only exist if an express term in the SPD conflicts with an express term in the plan.

The plaintiff does not challenge this proposition in any real sense. Rather she unconvincingly attempts to distinguish *Sprague*. In *Sprague*, the court of appeals drew heavily on

the fact that the employer possessed a reservation of rights in the SPD that provided at least some notice to plan participants that the employer might amend the terms from time to time. However, even the plaintiff's SPD contained a reservation of rights. It reads, in pertinent part:

> ***Amending Mid-Michigan Medical Center, Midland's ERISA Plan***
>
> *Mid-Michigan Medical Center, Midland reserves the right to amend, modify this Plan in any manner, at any time, which may result in the termination or modification of your coverage.*
>
> ***Amending Unum's Policy***
>
> *The Policy may be changed in whole or in part. Mid-Michigan Medical Center, Midland, can request a Policy change.*

Def.'s Mot. Standard Rev. Ex. 1, 1998 Summary Plan Description (emphasis added).

The plaintiff does not quarrel with this language. Instead, she insists that Amendment 20 was intended only to affect two to four part-time physician in Class 1. *See* Rossman dep. at 10. Since she was not part of that class, she reasons, she could not have been affected by the amendment. Finally, she asserts that the discretionary language was "slipped in."

These contentions, in the Court's view, belie the plain language of the amendment and the SPD. First, the SPD reserves the employer the right to change the plan. Second, the SPD states that the employer can request a proposal from the company for such change. Here, Mid-Michigan asked the defendant to propose a change in April 2001, to which the defendant responded by proposing Amendment 20. Third, the language of the amendment is clear. It notes that certain deletions and additions have been made. Importantly, nowhere does the amendment reference the fact that the intent of the parties was to have the additional terms apply only to Class 1 participants. Further, the discretionary language provision was featured prominently in the document. Finally, Amendment 20 provided that Mid-Michigan could reject the proposal in whole if Mid-Michigan was dissatisfied.

The document provides, in relevant part:

> If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of March 29, 2001.
> YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AGREEMENT

Amendment 20.

Plainly, then, Mid-Michigan asked to alter the plan, as it has the right to do and as summarized in the SPD. The defendant proposed Amendment 20. The amendment did not state that the provisions granting defendant discretion to determine applicant eligibility would apply only to a certain class of employees. The defendant provided a time frame and a method for accepting the amendment. Nothing in the record suggests that Mid-Michigan did not accept Amendment 20 in full or otherwise object to the failure to include a limitation to Class 1 participants. In fact, it was Rossman's understanding that Amendment 20 became effective on July 1, 2001. Simply because the discretionary language was proposed by the defendant along with the manner of acceptance does not make the amendment a unilateral change forced upon Mid-Michigan. Mid-Michigan could have rejected the amendment; it chose not to.

The Court therefore believes that Amendment 20 comports with the method for changing the plan as described in the plaintiff's SPD. Mid-Michigan requested the amendment and ultimately accepted. Consequently, there is no material difference between the SPD in this case and the SPD in *Sprague*. Both were simply silent on the issues relative to them and thus could not conflict with the express language of the respective plans. Amendment 20 appropriately governs in this case and requires the Court to apply the arbitrary and capricious standard of review.

B.

The plaintiff urges the Court to disregard Amendment 20 because she was never provided with a copy of it. She claims that the defendant was on notice for several years that the new SPDs were defective – they were not in booklet form – and did nothing to remedy the situation. She insists that the defendant had the duty to ensure that accurate plan information was communicated to her. This argument is unsupported in both law and fact.

Under ERISA, the duty to furnish accurate summary plan descriptions rests with the plan administrator, in this case Mid-Michigan. *See* 29 U.S.C. § 1022(a) (providing that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan"; 29 U.S.C. § 1021(a)(1) (providing that "[t]he administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan - (1) a summary plan description").

The deposition testimony further supports the conclusion that Mid-Michigan was in charge of providing accurate SPD's to plan participants. Christina Burke, account manager with the defendant, testified that the defendant prepares summary plan descriptions, but ultimately the responsibility for their dissemination rests with the plan administrator, in this case Mid-Michigan. Burke dep. at 21-22. In fact, she explained, that the defendant provides SPDs not out of obligation, but as a "courtesy to our clients to distribute to their employees." *Id.* at 53. She also emphasized that

communication with plan participants is Mid-Michigan's obligation as is the responsibility to request SPDs. *Id.* at 48-49. Finally, Burke stated that the defendant played no role in determining to whom SPDs should be given following a change in the policy. *Id.* at 50.

In fact, Mid-Michigan made the decision as to what type of change was sufficient to require it to communicate that change to employees. Rossman explained that it was up to her or Michael Hicks, vice president of human resources, to determine whether a change was significant enough to send to all plan participants. *Id.* at 27-28. Further, if Hicks was unsure about whether the change should be communicated to all participants, he had the discretion to bring the issue before Mid-Michigan's Board of Directors. *Id.* at 28. Rossman also noted that Mid-Michigan retained an outside law firm with whom she could consult if need be.

The Court can only conclude that Mid-Michigan elected not to provide updated SPD's to plan participants. Although the defendant provided what were in Mid-Michigan's view defective updated SPDs, Mid-Michigan never sought and obtained a new version to provide to its employees. Indeed, it appears that the defective SPDs – defective because they were not in booklet form – languished in Rossman's office until they were discarded.

C.

Finally, the plaintiff claims that the defendant is equitably estopped from enforcing the discretionary language provision contained in Amendment 20. However, notwithstanding the other elements of such a claim, the plaintiff must demonstrate justifiable reliance, in this case on the representations made in the 1998 SPD. *See Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007). The plaintiff cannot meet her burden. The SPD with which she was provided expressly states that "*Mid-Michigan Medical Center, Midland reserves the right to amend, modify this Plan*

*in any manner, at any time, which may result in the termination or modification of your coverage."* 1998 SPD (emphasis added). Further, the SPD provides that *"[t]he Policy may be changed in whole or in part. Mid-Michigan Medical Center, Midland, can request a Policy change."* *Ibid.* (emphasis added). Thus, the plaintiff knew of the possibility that the policy could be changed and there is no additional evidence that the defendant made any promises that the arbitrary and capricious standard would apply among other terms. The Court therefore concludes that the plaintiff's equitable estoppel argument lacks merit.

### III.

The Court concludes that the arbitrary and capricious standard of review governs this case. The plan was properly amended pursuant to the terms contained in the plaintiff's SPD and because the 1998 SPD was silent on the standard of review, no provision contained in that document conflicted with the plan that would require the Court to enforce the SPD over Amendment 20's plain language. Finally, the plaintiff's claim of equitable estoppel lacks merits. She is unable to demonstrate that she justifiably relied on any representation made by the defendant.

Accordingly, it is **ORDERED** that the defendant's supplemental brief in support of an arbitrary and capricious standard of review, construed as motion seeking application of that standard of review [dkt #22], is **GRANTED** and the plaintiff's amended supplemental brief, construed as a motion seeking application of the *de novo* standard of review [dkt # 25] is **DENIED**.

It is further **ORDERED** that the arbitrary and capricious standard of review shall apply in this case.

It is further **ORDERED** that on or before **September 7, 2007**, the defendant shall serve a copy of the administrative record, that does not include the 1998 SPD, upon counsel for the plaintiff.

The administrative record shall contain the complete benefits plan and the summary plan description furnished to the plaintiff during her employment. When the defendant files its cross motion on the administrative record, it shall file the entire administrative record. The parties may present a proposed stipulated order to the Court, for its consideration, to file the administrative record under seal.

It is further **ORDERED** on or before **October 5, 2007,** the parties shall each file their cross motion and brief to reverse or affirm the administrator's decision. The briefs shall analyze the evidentiary materials contained in the plan documents and the administrative record. The time for filing a response brief is governed by Local Rule 7.1. No reply briefs may be filed.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 7, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 7, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS